IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MARQUIS CATTLE COMPANY, a Montana Corporation,<br><br>          Plaintiff,<br><br>  vs.<br><br>CHUCK MURDOCK d/b/a C&M CATTLE and GARY L. SPIELMAN d/b/a G&M AGVENTURE,<br><br>          Defendants. | CV 19-87-GF-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

## **INTRODUCTION**

Plaintiff Marquis Cattle Company (MCC) brought this action against Chuck Murdock d/b/a C&M Cattle (Murdock) and Defendant Gary L. Spielman d/b/a G&M Agventure (Spielman). MCC asserts claims for breach of contract, unjust enrichment, and violations of the Packers and Stockyard Act of 1921, 7 U.S.C. § 181, *et seq*. Defendants have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) on grounds the Court lacks personal jurisdiction over them. MCC opposes the motions.

## BACKGROUND

This case arises out of a series of business transactions that involve the purchase of Montana cattle and their transport to Oklahoma and Texas.  MCC is a Montana corporation with its principal place of business in Belt, Montana.  MCC buys and sells Montana cattle subject to the provisions of the Packers & Stockyard Act of 1921.  Corey Marquis and his wife Beckie Marquis own and operate MCC.

Defendant Murdock is a citizen of Oklahoma.  Murdock owns and operates a preconditioning feed yard near Boise City, Oklahoma.  Murdock preconditions cattle for third parties who send their cattle to his feed yard.  Murdock does business as C&M Cattle.

Defendant Spielman resides in Dalhart, Texas.  Spielman owns and operates a ranch in Texas.  Spielman does business as G&M Agventure.

MCC alleges that Spielman's agent, Jeremy Byrd (Byrd), contacted Corey Marquis in Montana by telephone on multiple occasions in 2017 and instructed MCC to purchase Montana cattle for Spielman.  MCC alleges that it purchased the cattle and financed their transportation to Texas, per Byrd's instructions.

MCC alleges Murdock contacted Corey Marquis by telephone on or about December 7, 2017, and instructed MCC to purchase Montana cattle for him.  MCC alleges that Murdock and Spielman have failed to pay for all of the Montana cattle

that they acquired.  MCC alleges that Defendants still owe approximately

$111,000.

Murdock moved for leave to conduct jurisdictional discovery on March 17,

2020.  (Doc. 19).  The Court granted the motion.  (Doc. 30).  The parties have

completed their jurisdictional discovery.  The jurisdictional discovery included

written discovery and the depositions of Jeremy Byrd, Cory Marquis and Beckie

Marquis.  (*See* Deposition Transcripts — Docs. 47, 48, 49).  The parties submitted

their supplemental briefs on personal jurisdiction on July 16, 2021.  (Docs. 38, 40

and 41).  The Court has considered the parties' submissions and is prepared to rule.

## DISCUSSION

The Court must look to Montana law to determine whether it possesses

personal jurisdiction over the Defendants.  *Picot v. Weston*, 780 F.3d 1206, 1211

(9th Cir. 2015).  Montana applies a two-step test to determine whether a Montana

court may exercise personal jurisdiction over a non-resident defendant.  *Milky*

*Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015).  The Court first

determines whether either general jurisdiction or specific jurisdiction exists under

Montana Rule of Civil Procedure 4(b)(1).  *Id.*  General jurisdiction exists if the

defendant is "found within the State of Montana."  *Id.*  To be found within

Montana for general jurisdiction purposes, it is necessary that the defendant

conduct activities within the state that are "substantial or systematic and continuous." *Id.* Specific jurisdiction exists if the plaintiff asserts a claim for relief against a non-resident defendant that arises from one or more of the acts listed in Montana's long-arm statute, Mont. R. Civ. P. 4(b)(1)(A-G). *Buckles v. Continental Resources, Inc.*, 402 P.3d 1213, 1217 (Mont. 2017).

If personal jurisdiction exists under the first step of the test, the Court must then determine whether the exercise of personal jurisdiction conforms with the "traditional notions of fair play and substantial justice embodied in the due process clause." *Milky Whey, Inc.*, 342 P.3d at 17.

Here, Defendants have moved to dismiss based solely on the written record. Defendants declined the Court's offer of an evidentiary hearing. (*See* Doc. 51). When defendants move to dismiss a complaint for lack of personal jurisdiction based on a written record rather than an evidentiary hearing, the plaintiff may defeat the motion by submitting affidavits that present a "*prima facie* showing of jurisdictional facts." *Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

MCC relies on specific jurisdiction in this case. MCC argues that this Court possesses specific jurisdiction over Murdock and Spielman under Section 4(b)(1)(A) of Montana's long arm statute.

Section 4(b)(1)(A) states that a defendant may be subject to specific jurisdiction if the plaintiff's claims arise from the defendant's act of transacting business within Montana, either personally or through an agent. Mont. R. Civ. P. 4(b)(1)(A). The Court may consider a number of factors in determining whether the Defendants have transacted business in Montana, including whether they negotiated or solicited business here. *Milky Whey, Inc.*, 342 P.3d at 17.

**Facts Relating to Murdock**

MCC argues that Murdock transacted business in Montana by directly soliciting MCC for the purchase of cattle on or about December 7, 2017. In support of its argument, MCC has presented the Declaration of Cory Marquis, the deposition testimony of Mr. Marquis, a Billings livestock auction yard invoice dated December 7, 2017, and a brand inspection report from the Montana Department of Livestock dated December 7, 2017. (Docs. 15-1; 38-1; 38-3; 48). Mr. Marquis states, both in his declaration and in his deposition testimony, that Murdock called him in Montana on or about December 7, 2017 and placed an order for the purchase of Montana cattle. (*See* Cory Marquis Declaration, Doc. 15-1 at 3; Cory Marquis Depo., Doc. 48, pg. 18, ln. 7-12; pg. 23, ln. 22 - pg. 24, ln. 4; pg. 29, ln. 6-11; pg. 52, ln. 10-12). The invoice from the Billings livestock auction yard shows that Mr. Marquis purchased 128 head of cattle for Murdock on

December 7, 2017.  (Doc. 38-1 at 1).  The brand inspection report shows Murdock

as the owner of the cattle that Mr. Marquis purchased on December 7.  (Doc. 38-3).

Although Murdock states in his declaration that he never ordered cattle from

Mr. Marquis on or about December 7, 2017 (Doc. 7 at 2), the Court must resolve

this factual dispute in favor of MCC for purposes of determining whether personal

jurisdiction exits.  See *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

1073 (9th Cir. 2011).

**Facts Relating to Spielman**

MCC argues that Spielman transacted business in Montana by having his

agent, Jeremy Byrd, place orders with MCC for the purchase of cattle on multiple

occasions in 2017.  In support of its argument, MCC has presented the Declaration

of Cory Marquis, the deposition testimony of Mr. Marquis, and the deposition

testimony of Jeremy Byrd.  (Docs. 15-1; 47; 48).  Mr. Byrd testified in his

deposition that he was Spielman's agent.  (Jeremy Byrd Depo. Doc. 47, pg. 34, ln.

4-12; pg. 63, ln. 35 - pg. 64, ln. 3).  Mr. Bryd testified that he called Mr. Marquis

on multiple occasions in 2017, on Spielman's behalf, and placed orders for the

purchase of Montana cattle.  (Byrd Depo., pg. 29, ln.6 - pg. 30, ln. 12; pg. 34, ln. 4-

12; pg. 62, ln. 1-20; pg. 63 ln. 4-13; pg. 115, ln. 18-25; pg. 116, ln. 1-7).

Although Spielman states in his declaration that he has never asked "Jeremy Byrd [to] procure cattle for [him] in Montana" and that Jeremy Byrd "is not and "has never been [his] agent" (Doc. 9-1 at 2), the Court must resolve this factual dispute in favor of MCC.  See *CollegeSource, Inc.*, 653 F.3d at 1073.

Based on the written record presented, the Court finds that both Murdock and Spielman transacted business in Montana and that MCC's claims arise out of those transactions.  Montana's long-arm statute therefore reaches both Murdock and Spielman.

**Due Process Requirements**

The Montana Supreme Court has adopted the Ninth Circuit's three-factor due process test to evaluate whether the exercise of specific jurisdiction would comport with the federal due process clause. *Buckles*, 402 P.3d at 1218.  Specific jurisdiction comports with federal due process if:

1. The non-resident defendant consummates some transaction with the forum or a resident thereof, or performs some act by which he purposefully avails himself of the privileges of conducting activities in the forum;

2. The claim asserted by the plaintiff arises out of, or relates to, the defendant's forum-related activities; and

3. The exercise of jurisdiction would be reasonable.

*King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011).

7

The Montana Supreme Court has stated that the plaintiff need only demonstrate the first two elements to establish personal jurisdiction. *Bunch v. Lancair International, Inc.*, 202 P.3d 784, 795 (Mont. 2009). Once the plaintiff demonstrates the first two elements, a presumption of reasonableness arises. *Id.* The burden then shifts to the defendant to present a compelling case that personal jurisdiction would not be reasonable. *Id.*

### a. Purposefully Avail

The first prong of the due process analysis requires a showing that the defendant purposefully availed himself of the privilege of conducting activities in the forum state.

Here, Defendants purposefully availed themselves of the privileges of conducting business in Montana when they purchased Montana cattle and contracted with MCC for the delivery of the cattle to Oklahoma and Texas. Murdock personally placed an order for Montana cattle with MCC on or about December 7, 2017. Spielman placed multiple orders for Montana cattle in 2017 through his agent, Jeremy Byrd.

### b. Forum-Related Activities

The second prong of the due process analysis requires a showing that the plaintiff's claims arise out of the defendants' forum-related activities.

Here, all of MCC's claims against the Defendants arise out of the Defendants' cattle transactions in Montana.

### c. Reasonableness

The third prong of the due process analysis requires that the exercise of jurisdiction be reasonable.  Given that MCC has established the first two elements, Defendants bear the burden to show that the exercise of jurisdiction would not be reasonable.  The Montana Supreme Court has identified a number of nonexclusive factors that may be considered when examining the reasonableness of jurisdiction. Bunch, 202 P.3d at 795 (citing *Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 187 (Mont. 1990)).  Those factors include:

1.  The extent of the defendant's purposeful interjection into Montana;

2.  The burden on the defendant of defending in Montana;

3.  The extent of the conflict with the sovereignty of the defendant's state;

4.  Montana's interest in adjudicating the dispute;

5.  The most efficient resolution of the controversy;

6.  The importance of Montana to the plaintiff's interest in convenient and effective relief; and

7.  The existence of an alternative forum.

*Id.*

These factors support a finding of jurisdiction in this case. Defendants' interjection into Montana was purposeful and significant. Defendants ordered Montana cattle from MCC on multiple occasions. The burden on the Defendants to defend this case in Montana is minimal. Most of the witnesses reside here. Any sovereignty conflict with Texas and Oklahoma is minimal. Defendants voluntarily purchased Montana cattle here. Montana's interest in adjudicating this dispute is great. The cattle industry comprises a significant portion of Montana's agricultural economy. Although Texas and Oklahoma may also provide a forum for resolution of this matter, judicial economy considerations favor jurisdiction in Montana. The exercise of specific personal jurisdiction over Murdock and Spielman in this matter does not offend federal due process.

Accordingly, IT IS HEREBY ORDERED:

1.      Defendant Murdock's Motion to Dismiss to Dismiss for Lack of Personal Jurisdiction (Doc. 5) is DENIED.

2.      Defendant Spielman's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 8) is DENIED.

DATED this 30th day of August, 2021.

John Johnston
United States Magistrate Judge